897 So.2d 537 (2005)
Ira FREILICH, Appellant,
v.
Susan FREILICH, Appellee.
No. 5D03-3229.
District Court of Appeal of Florida, Fifth District.
March 4, 2005.
*539 Robert J. Wheelock of Robert J. Wheelock, LLC, Orlando, for Appellant.
Mark A. Fromang of Fromang & Fromang, P.A., Orlando, for Appellee.
SAWAYA, C.J.
In this dissolution of marriage action, the husband appeals the final judgment, asserting that the trial court erroneously: (1) imputed income to him; (2) awarded alimony, child support, and attorney's fees and made equitable distribution without competent, substantial evidence; and (3) accepted the wife's proposed final judgment verbatim without making findings of fact. We affirm as to all issues raised except the amount of income imputed to the husband. Therefore, we will devote the remainder of this opinion to that issue and explain why the amount awarded will have to be recalculated.[1]
Shortly after the husband and wife were married on June 10, 1984, the husband commenced a medical career as a dermatologist. Three children were born during the course of the marriage. In 2000, having grown disillusioned with the practice of medicine, the husband decided to take a sabbatical. While on sabbatical, the Florida Board of Medicine suspended the husband's medical license for one year based on a series of charges alleged by a disgruntled employee. Although his license was reinstated in 2002, the husband elected not to resume the practice of medicine, asserting tainted reputation and inability to obtain malpractice insurance at a reasonable rate. Instead, the husband entered law school seeking a new career path in the law.
Prior to the final hearing, the parties stipulated to all issues except equitable distribution of certain assets, potential imputation of income to the husband, alimony, child support, and attorney's fees. As previously indicated, we will turn to the *540 issue of imputed income, which impacts the amounts awarded for alimony, child support, and potentially, attorney's fees.
The final judgment specifically states that "[t]he Husband is voluntarily underemployed, therefore a gross annual income of $200,000.00 will be imputed to the Husband for the purpose of establishing child support and alimony." We begin with the widely-accepted notion that "[t]he very concept of imputed income is to require those who are able to do so to contribute to their support or to the support of those for whom they are responsible." Daly v. Daly, 679 So.2d 36, 37 (Fla. 5th DCA 1996). For purposes of child support, the court will be required to impute income to a parent who is voluntarily unemployed or underemployed, pursuant to section 61.30(2)(b), Florida Statutes (2003), which provides:
Income on a monthly basis shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or under-employment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community; however, the court may refuse to impute income to a primary residential parent if the court finds it necessary for the parent to stay home with the child.
Unlike section 61.30(2)(b), the statutory provisions that govern alimony awards found in section 61.08, Florida Statutes (2003), do not specifically provide for imputation of income to a spouse. When determining whether to award alimony based on imputation of income to a spouse, some decisions advert to the provisions of section 61.08(2)(d) and (g), Florida Statutes (2003), which state that "the court shall consider all relevant economic factors," which include "[t]he financial resources of each party" and "[a]ll sources of income available to either party." See Tarnawski v. Tarnawski, 851 So.2d 239 (Fla. 4th DCA 2003); Bacon v. Bacon, 819 So.2d 950 (Fla. 4th DCA 2002); Smith v. Smith, 737 So.2d 641 (Fla. 1st DCA 1999); Shrove v. Shrove, 724 So.2d 679 (Fla. 4th DCA 1999); see also Cochran v. Cochran, 819 So.2d 863 (Fla. 3d DCA 2002); Warren v. Warren, 629 So.2d 1079 (Fla. 3d DCA 1994). Other decisions, including decisions from this court, simply apply the often repeated general rule that "[a] court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." Alpert v. Alpert, 886 So.2d 999, 1001 (Fla. 2d DCA 2004) (quoting Ritter v. Ritter, 690 So.2d 1372, 1374 (Fla. 2d DCA 1997)); see Andrews v. Andrews, 867 So.2d 476 (Fla. 5th DCA 2004); Solomon v. Solomon, 861 So.2d 1218 (Fla. 2d DCA 2003); Bronson v. Bronson, 793 So.2d 1109, 1111 (Fla. 4th DCA 2001); Davis v. Davis, 691 So.2d 626 (Fla. 5th DCA 1997) ("A court, however, may impute income upon a showing that there is a capability to earn more by the use of more diligent efforts."); Kovar v. Kovar, 648 So.2d 177, 178 (Fla. 4th DCA 1994) ("[W]hen a husband obligated to pay support voluntarily reduces his income, the trial court has discretion to impute to him the income he is capable of earning."). Hence, the lack of a specific legislative directive similar to that found in section 61.30(2)(b) has not proved to be an impediment to imputation of income for purposes of awarding alimony.
*541 The courts may also impute income to a spouse for purposes of awarding attorney's fees. See Smith; Arouza v. Arouza, 670 So.2d 69 (Fla. 3d DCA 1996); see also Wilkinson v. Wilkinson, 714 So.2d 524 (Fla. 5th DCA 1998). In Smith, the court stated:
The statute addressing attorney's fees, suit money, and costs contemplates the trial court's consideration of "the financial resources of both parties," including the parties' relative financial need or ability to pay. § 61.16(1), Fla. Stat. (1997); Satter v. Satter, 709 So.2d 617 (Fla. 4th DCA 1998) (on mot. for reh'g); Kartzmark v. Kartzmark, 709 So.2d 583 (Fla. 4th DCA 1998). In deciding whether an award of attorney's fees is justified, a trial court may impute income to a voluntarily unemployed or voluntarily underemployed party. Arouza v. Arouza, 670 So.2d 69 (Fla. 3d DCA 1995). Taken together, these statutes support the former husband's point that the imputation of income to him affected the trial court's decisions regarding child support, alimony, and attorney's fees and costs.
737 So.2d at 643.
A common thread running through all of the decisions is that the voluntary unemployment or underemployment of a spouse or parent is a factor that the courts consider in determining whether to impute income for purposes of awarding child support, alimony, and attorney's fees. As this court held in Andrews, "[t]o impute income to a former spouse, the trial court must find that the unemployment is voluntary, and resulted from either the spouse's pursuit of his or her own interests, or a less than diligent and bona fide effort to find employment paying at a level equal to that formerly enjoyed." 867 So.2d at 478 (citation omitted). While this standard is generally applied in most cases involving imputation of income, a different standard has emerged when the parent or spouse ceases full-time employment to seek enhancement of his or her education.
In cases involving educational enhancement, the courts have found the best interest of the support recipient to be the better standard to apply to determine whether imputation of income is appropriate. The genesis of this relatively new standard is the decision in Overbey v. Overbey, 698 So.2d 811 (Fla.1997), which involved the issue of whether it was appropriate to modify child support obligations based on the parent's desire to enhance her education. Noting the confusion among the district courts when faced with the imputation of income to a parent who makes a voluntary decision to return to school, the court held that resolution of the issue should depend on whether the reduction would be in the best interest of the recipient or the children rather than on whether the reduction was voluntary. Id. at 814-15.
The decision in Overbey was subsequently applied by this court in Pribble v. Pribble, 800 So.2d 743 (Fla. 5th DCA 2001), to an appeal of a final judgment of dissolution of marriage rather than a modification petition. In Pribble, after awarding primary physical custody of the minor children to the father, the trial court held that because the wife voluntarily ceased employment to go back to school to attempt to obtain a law degree, the wife was voluntarily unemployed and thus it was proper to impute income to her for purposes of child support. This court reversed that part of the final judgment and remanded the case to the trial court with instructions to determine whether the wife's educational pursuits were in the best interest of the children. This court explained:

*542 Overbey indicated that a court may enter an order modifying child support payments when the modification is found to be necessary in the best interest of the child or when there is a substantial change of circumstances. § 61.13(1)(a), Fla. Stat. In Ledbetter v. Bell, 698 So.2d 1272 (Fla. 4th DCA 1997), the former wife sought to have the trial court impute income to the husband, a licensed medical doctor who was pursuing a lengthy post-graduate fellowship program. In Ledbetter, the appellate court noted that the trial court in its written order had focused primarily on the fact that the children in that case, because of their ages, would never benefit from the husband's prolonged educational pursuits. Thus, the trial court concluded that it was appropriate to impute income to the husband.
Pursuant to section 61.13(1)(a), Florida Statutes, in a proceeding for dissolution of marriage, the court may at any time order either or both parents who owe a duty of support to a child to pay support in accordance with the guidelines in section 61.30. While it is arguable that Overbey is limited to modification of child support situations, the better position is that the lower court should not apply section 61.30(2)(b) at all in an initial determination of child support if it determines that a party's reduction in income due to educational pursuits will ultimately benefit the minor children of the marriage.
800 So.2d at 746-47. In Pribble, we saw no logical reason to confine application of the best interest standard in educational enhancement cases to modification proceedings under section 61.30, and accordingly extended Overbey. Neither do we see any reason to restrict the best interest standard to child support issues. Hence, we conclude that the best interest standard should also apply to determine whether imputation of income to a spouse seeking educational enhancement is an appropriate basis for an award of alimony.
Therefore, in order to determine whether imputation of income is appropriate in the instant case, we must apply a two-part analysis that requires us to determine: (1) whether the husband's abandonment of his medical career in order to attend law school is in the best interest of the wife and children; and (2) whether the trial court properly determined the amount to be imputed. To aid us in our analysis, we look to some basic rules regarding the appropriate standard of review we must apply. Generally, sufficient factual findings should be included in the final judgment regarding child support[2] and alimony awards.[3] Specifically, as to imputation *543 of income, if the trial court does not include specific findings in the final judgment, the record must reveal competent, substantial evidence to support the trial court's decision. Pribble, 800 So.2d at 746 ("Normally, according to the plain language of section 61.30(2)(b), Florida Statutes, the only finding required for imputation of income would be a finding that the parent is voluntarily unemployed or underemployed."); Burkhardt v. Bass, 711 So.2d 158 (Fla. 4th DCA 1998); Vaccaro v. Vaccaro, 677 So.2d 918 (Fla. 5th DCA 1996) (affirming the trial court's imputation of income in the absence of specific findings where there was substantial, competent evidence in the record to support the decision). Reversal is required, however, when there are no specific findings in the final judgment regarding imputation of income and there is no competent, substantial evidence in the record to support the trial court's decision. See Burkhardt; Warner v. Warner, 692 So.2d 266, 269 (Fla. 5th DCA 1997) (requiring reversal where there is an absence of both specific findings and record evidence to support the imputation of income); see also Woodard v. Woodard, 634 So.2d 782, 783 (Fla. 5th DCA 1994) ("If the court is going to impute income not apparent from the record, it must indicate the amount and source."). The standard of review we must therefore apply to appropriately review a trial court's order imputing income to a spouse is whether competent, substantial evidence supports the findings. See Brown v. Brown, 784 So.2d 464, 467-68 (Fla. 5th DCA), review denied, 797 So.2d 584 (Fla.2001) (citing Hinton v. Smith, 725 So.2d 1154, 1156-57 (Fla. 2d DCA 1998)); Vaccaro.
Turning to the first part of the analysis, we have examined the final judgment wherein the trial court found that "the Husband's temporary reduction in income resulting from his pursuit of additional education is not in the best interest of the child support recipients," citing Pribble and Ledbetter. We find substantial, competent evidence in the record to support this finding. As to the alimony award, while the trial court did not make a specific finding as to the best interest of the recipient wife, it is clear from the other findings contained in the final judgment and the evidence contained in the record, that pursuit of a legal education in lieu of furtherance of the husband's medical career, with the attendant reduction in alimony payments, would not be in the best interest of the wife. Accordingly, we conclude that substantial, competent evidence is contained in the record to support the decision of the trial court to impute income to the husband.
Having determined that the trial court properly decided to impute income, the second part of the analysis requires that we decide whether an annual income of $200,000 was the proper amount to impute to the husband. Pursuant to section 61.30(2)(b), the level of income imputed must be based on consideration of the parent's "recent work history, occupational qualifications, and prevailing earnings level in the community." § 61.30(2)(b), Fla. Stat. (2003). Borrowing from this statute, the courts consider the same factors in determining the amount to impute for alimony awards and attorney's fees. See Andrews, 867 So.2d at 478 ("In determining the amount of income to impute, the court must consider the spouse's recent work history, his or her occupational qualifications, and the prevailing earnings in the community for that class of available jobs.") (citations omitted); Solomon, 861 So.2d at 1220 ("In imputing income, the court must consider recent work history as well as occupational qualifications and prevailing earnings."); Tarnawski; Smith, *544 737 So.2d at 642 (holding these factors must be considered for purposes of determining amount imputed for child support, alimony and attorney's fee awards). It is error for a trial court to base the amount of imputed income solely on the past earnings of the parent or spouse without consideration of the other factors. Andrews, 867 So.2d at 479 ("Rebecca's prior income, although relevant, is insufficient to support the amount currently imputed to her."); Greenberg v. Greenberg, 793 So.2d 52 (Fla. 4th DCA 2001); Woodard, 634 So.2d at 783 (holding that current income must be determined and "[p]ast average income, unless it reflects current reality, simply is meaningless in determining a present ability to pay.").
Here, the trial court stated in the final judgment that the amount of imputed income "is based on the parties' testimony regarding the annual income derived from the Husband's medical practice." We are unable to locate any findings that indicate the trial court considered the occupational qualifications of the husband and the prevailing level of income in the community in light of the fact that his medical license had been suspended and that this taint on his medical reputation, according to the testimony, affected his ability to engage in the medical profession at an earnings level achieved prior to the suspension. As we have indicated, relying on past work history and earnings alone to calculate the amount of imputed income is erroneous.
We, therefore, reverse that portion of the final judgment imputing annual income to the husband in the amount of $200,000 and remand for further proceedings to recalculate the amount to be imputed consistent with this opinion. In the event a different amount of imputed income is ordered by the court, reconsideration of the amount awarded for alimony and child support may be required. We note that the final judgment reserved jurisdiction to award the amount of attorney's fees to the wife. When the proper amount of imputed income is determined by the court, that amount may be factored into the calculations regarding the amount of attorney's fees to be awarded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SHARP, W. and PETERSON, JJ., concur.
NOTES
[1] Because the foundation for the awards of child support and alimony is the amount of income erroneously imputed to the husband, the trial court may have to reconsider the amount of alimony and child support awarded after the amount of imputed income is recalculated.
[2] See Manolakos v. Manolakos, 871 So.2d 258, 259 (Fla. 4th DCA 2004) ("The trial court's child support award, like the equitable distribution of the parties' property and the alimony award, lacked sufficient factual findings as required under section 61.30, Florida Statutes (2002)."); Guida v. Guida, 870 So.2d 222 (Fla. 2d DCA 2004); Ruberg v. Ruberg, 858 So.2d 1147, 1155 (Fla. 2d DCA 2003); Meighen v. Meighen, 813 So.2d 173, 175 (Fla. 2d DCA 2002) ("The failure to include the required factual findings in the final judgment makes meaningful appellate review impossible and requires reversal of the wife's award of permanent alimony and lump sum alimony.") (citations omitted); Parenteau v. Parenteau, 795 So.2d 1124 (Fla. 5th DCA 2001).
[3] See Farley v. Farley, 800 So.2d 710 (Fla. 2d DCA 2001); § 61.08(1), Fla. Stat. (2003) (requiring the trial court to include findings of fact in the final judgment relative to the factors enumerated in section 61.08(2)); Smith v. Smith, 689 So.2d 1312 (Fla. 5th DCA 1997); Rausch v. Rausch, 680 So.2d 624, 624 (Fla. 5th DCA 1996) ("We vacate the alimony award because the dissolution judgment fails to include the specific findings of fact required under section 61.08(1), Florida Statutes (1993).").