923 So.2d 582 (2006)
Oram J. MORIN, Appellant,
v.
Paula MORIN, Appellee.
No. 5D04-4258.
District Court of Appeal of Florida, Fifth District.
March 24, 2006.
*583 Scott R. McHenry, of McHenry Law Firm, P.A., Altamonte Springs, for Appellant.
Kenneth D. Morse, Orlando, for Appellee.
ORFINGER, J.
The former husband, Oram J. Morin, appeals the final judgment dissolving his marriage to the former wife, Paula Morin. The parties separated and began dissolution proceedings after a thirty-year marriage. During most of the marriage, the former wife was a homemaker. After the dissolution proceedings commenced, the former wife took a job as a receptionist at an annual salary of $23,000. The former husband, a mechanical engineer, earned between $53,000 and $90,000 annually in the years immediately prior to the parties' separation. The former husband contends that the trial court erred when it imputed income to him in the amount of $102,000 annually for the purpose of determining his alimony obligation to the former wife. While we agree that the record contains competent, substantial evidence supporting the trial court's conclusion that the former husband was voluntarily underemployed or unemployed, we reverse for the trial court to recalculate the amount of imputed income and alimony.
In order to determine whether to impute income to a spouse, the trial court must determine (1) whether the imputation of income is appropriate, and, if so, (2) the amount of income to be imputed. See Freilich v. Freilich, 897 So.2d 537, 542 (Fla. 5th DCA 2005). Here, the trial court found that the former husband "refuses to seek employment and refuses to work," and that he "has available work in his field, which is readily attainable, but that [he] refuses to be employed." Because the record is replete with evidence supporting that finding, we concern ourselves only with the amount of income imputed.
In determining the amount of income to impute for an alimony award, the trial court should consider a party's "recent work history, occupational qualifications, and prevailing earnings level in the community." Freilich, 897 So.2d at 543. In this case, the trial court imputed income in the amount of $102,000 to the former husband, based primarily on the testimony of witnesses who testified that, based on the former husband's experience, reputation, and the available work in his field, he could earn at least $100,000 annually. However, the trial court also determined that "in years prior to the separation, [the former husband] earned between $53,000 to $90,000 annually."
It is clear that the trial court concluded that the former husband was voluntarily underemployed and may have been *584 hiding income. Certainly, there is competent evidence in the record to support that conclusion. Nonetheless, it was error for the trial court to impute income to the former husband at a level greater than which the former husband ever earned during the marriage, absent special circumstances, none of which were shown here. "[A] court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." Alpert v. Alpert, 886 So.2d 999, 1001 (Fla. 2d DCA 2004) (quoting Ritter v. Ritter, 690 So.2d 1372, 1374 (Fla. 2d DCA 1997)). The level of income imputed must be based on consideration of the party's recent work history, occupational qualifications, and prevailing earnings level in the community for which the payor is adequately trained. Freilich, 897 So.2d at 543. Consequently, on remand, the amount of imputed income and permanent alimony must be reconsidered.
One other issue argued by the former husband merits discussion. The former husband owned sixty percent of the stock of DSS Consulting, Inc. When the trial court equitably distributed that asset, it failed to consider that forty percent of the capital stock of DSS was owned by a third party, and instead, attributed the entire net worth of DSS to the former husband. On remand, the trial court should reduce the value placed on the former husband's stock in DSS to reflect his sixty percent ownership, unless the trial court finds that the third party owning the remaining DSS stock is holding it for the former husband's benefit.
Finally, on remand, the trial court shall also address the former husband's voluntary retirement, given his age. We find no merit in the other arguments made by the former husband.
AFFIRMED IN PART; REVERSED IN PART, REMANDED.
SHARP, W. and LAWSON, JJ., concur.